IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NU RENTALS, LLC

                     Plaintiff,

v.                                         CIVIL ACTION NO.  2:08-cv-01128

GARY LEE CHANDLER

                     Defendant.

MEMORANDUM OPINION & ORDER

Pending before the court is defendant Gary Lee Chandler's Motion for Summary Judgment [Docket 32].  For the reasons stated below, this motion is **GRANTED in part** and **DENIED in part**.

NU Rentals was untimely in filing its Response in Opposition [Docket 7] to Mr. Chandler's Motion to Dismiss.  At that time, I declined to strike NU Rentals's Response in Opposition, but I noted that "any further violation of the local rules will not be tolerated."  (Order 3 n.1 [Docket 9].)  By this court's April 22, 2009 Order [Docket 15], plaintiff NU Rentals, LLC's ("NU Rentals") response to Mr. Chandler's Motion for Summary Judgment was due November 19, 2009.  NU Rentals filed its Memorandum in Response and Opposition [Docket 40] on November 23, 2009.  Because it was untimely filed, I will not consider NU Rentals's Memorandum in Response and Opposition in ruling on Mr. Chandler's Motion for Summary Judgment.

**I.      Background**

A.  *Facts*

Prior to 1983, the property at issue in this case was owned by Texaco, Inc. and operated as a gas station.  Mr. Chandler purchased the property in January 1983.  According to NU Rentals, when Mr. Chandler bought the property he also purchased five underground storage tanks, located on the property, that had previously been used by Texaco.  (Compl. [Docket 1] ¶ 8.)  NU Rentals further alleges that Mr. Chandler, "by letter addressed to Texaco, requested that the underground storage tanks not be closed upon transfer of ownership of the subject real property to him because he intended to use the underground storage tanks at the same location."  (*Id.*)  Mr. Chandler states that he never used any of the storage tanks and that Texaco forced him to sign this form letter in order to acquire the property.  (Def.'s Mem. Supp. Mot. Summ. J. [Docket 33] 2-3, 9-10.)  Upon acquiring the property, Mr. Chandler attempted to remove the storage tanks.  One tank was left on the property, however, apparently because it was too difficult to remove.  (Compl. ¶ 10.)

In September 2007, Mr. Chandler contracted to sell the property to Ed Street Company.  The contract ("Sale Agreement") conditioned the purchaser's obligations on its obtaining "satisfactory assurances within the due diligence period" that, among other things, "a level one environmental survey reflects that the property is free from contamination by hazardous wastes and substances."  (Def.'s Mem. Supp. Mot. Summ. J., Ex. D ¶ 9.)  Purchase was also conditioned on "any other conditions that may present themselves and which are not now contemplated by the parties or included in this agreement."  (*Id.*)  The Sale Agreement provided that if these conditions were not "satisfied to Purchaser's reasonable satisfaction or waived, Purchaser may at its sole discretion terminate" the sale "by notifying Seller before the end of said due diligence period."  (*Id.*)  The Sale

Agreement also gave the purchaser the right to enter the property and conduct tests, as long as such inspections did not materially alter or damage the property. (*Id. ¶* 10.)

Prior to closing, the Ed Street Company assigned its rights to the property to NU Rentals. After conducting an environmental review, NU Rentals modified the terms of the Sale Agreement through an Escrow Agreement dated June 13, 2008. (Def.'s Mem. Supp. Mot. Summ. J., Ex. E.) Mr. Chandler agreed to place in escrow $50,000 from the proceeds of the sale of the property, and NU Rentals agreed to contract with a third-party contractor "to remove and dispose of any contaminated dirt and debris" from the property. (*Id.* ¶ 2.) NU Rentals assumed responsibility for costs over $50,000; if the costs were less than $50,000, Mr. Chandler was entitled to the excess from the escrow fund. (*Id.* ¶ 7.) Mr. Chandler states that the sale of the property to NU Rentals closed the same day the Escrow Agreement was executed. (Def.'s Mem. Supp. Mot. Summ. J. 6.)

NU Rentals states that it discovered an underground storage tank on the property, as well as severe contamination from either or both this tank and the previously removed tanks, after the contract for sale of the property was executed. (Compl. ¶ 13.) As a result, NU Rentals allegedly was "required to take corrective action in order to comply with applicable environmental standards, and thus began removing the remaining underground storage tank and excavating the contaminated soil." (*Id.* ¶ 14.) According to NU Rentals, this corrective action has caused it to incur extensive property and pecuniary damages. (*Id.* ¶ 15.)

B. *The Instant Lawsuit*

NU Rentals filed its Complaint on September 26, 2008. It brings three Counts against Mr. Chandler. Count I, "Statutory and Regulatory Liability to Third-Parties," asserts that Mr. Chandler, pursuant to federal and state statutes and regulations, is the owner or operator of the previously

removed underground storage tanks, as well as the tank that NU Rentals later found on the property. (*Id.* ¶ 17.)  NU Rentals maintains that Mr. Chandler is thus liable to NU Rentals for the costs and expenses incurred in the excavation and removal of the tank and contaminated soil, and for property damage caused by the release of hazardous materials from the storage tanks.  (*Id.* ¶¶ 18-22.)

Count II, "Intentional/Fraudulent Misrepresentation and/or Negligent Misrepresentation," asserts that Mr. Chandler, "acting in bad faith with gross fraud, malice, oppression, and intentionally, willfully, wantonly, recklessly, carelessly, and negligently made a material representation to NU Rentals by concealing and/or failing to disclose the existence of the underground storage tank buried on the subject real property" and "the existence of released hazardous material on the subject real property from the underground storage tank(s)."  (*Id.* ¶¶ 24-25.)  NU Rentals argues that Mr. Chandler made statements that he knew were false to induce NU Rentals to purchase the property.  (*Id.* ¶¶ 26-27.)  Count III requests attorneys' fees.

Mr. Chandler filed his Motion for Summary Judgment on November 5, 2009.  He seeks judgment in his favor on all counts.

## II.      Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

**III.     Discussion**

A. *Statutory and Regulatory Liability*

In seeking summary judgment on Count I, Mr. Chandler argues that he is not the "owner"

or "operator" of the storage tanks, and never has been.  I agree.

West Virginia law defines the "owner" of an underground storage tank in use prior to

November 8, 1984, but no longer in use on that date as "a person who owned such a tank

immediately before the discontinuation of its use."  W. Va. Code, § 22-17-3(e)(2).  "Operator" is

defined as "any person in control of, or having responsibility for, the daily operation of an

underground storage tank."  *Id.* § 22-17-3(d).  These definitions are almost identical to those

contained in federal law.  *See* 42 U.S.C. § 6991; 40 C.F.R. § 280.12.

Mr. Chandler contends that he is not the owner of the underground storage tanks because

they were not in use on November 8, 1984, and the immediate owner before the discontinuation of

their use was Texaco.  He submits photographs of what the property looked like when he purchased

it in 1983, purportedly showing that the tanks were out of service at this time.  (Def.'s Mem. Supp.

Mot. Summ. J., Ex. A.)  He states that by June of 1983, the property was operating as a car wash.

( Def.'s Mem. Supp. Mot. Summ. J. 9.)  Mr. Chandler points to a statement that the remaining tank

"had already been filled in place with sand" when Mr. Chandler removed the other tanks.  (Def.'s

Mem. Supp. Mot. Summ. J., Ex. F.)  Mr. Chandler states that he "never used, maintained, or

operated any [underground storage tanks] for any purpose and could not have used the tank in

question here because it was unusable."  (Def.'s Mem. Supp. Mot. Summ. J. 9.)

Furthermore, Mr. Chandler asserts that any documents prepared by Texaco and purportedly

signed by him at closing do not affect the fact that he is not an owner or operator of any of the

underground storage tanks. (*Id.* at 9-10.) *See, e.g., Texaco Inc.*, 1991 W. Va. ENV LEXIS 28 (State Water Res. Bd. 1991) ("The mere fact that Mr. Angotti signed a statement presented to him by Texaco, Inc. indicating an intent to use the [underground storage] tanks does not establish that they were in face 'used' or 'in use' [after Texaco sold the tanks]. . . . In fact, shortly thereafter, the gasoline pumps were removed . . . .")).) *Cf. Ark. Dep't Envir. Quality v. Pfeifer*, 109 Fed. Appx. 125 (8th Cir. 2004) (unpublished opinion) (per curiam) (finding that property owner was not the owner of the underground storage tanks at issue, because, inter alia, "there is no indication Pfeifer intended to make use of [the tanks] other than to remove them from the land").

Since environmental liability can attach to an owner or operator of an underground storage tank, Texaco had every reason to designate Mr. Chandler as the owner of these tanks. It is undisputed that upon gaining possession of the property, Mr. Chandler "attempted to remove the underground storage tanks." (Compl. ¶ 10.) NU Rentals alleges in its Complaint that Mr. Chandler "was the last person to own the subject real property when the underground storage tanks were operational." (*Id.* ¶ 9.) But NU Rentals does not allege that Mr. Chandler owned the storage tanks while they were still in use, as required by the statute. For purposes of establishing liability under the West Virginia Underground Storage Tank Act and analogous federal law, Mr. Chandler is not and never was the owner or operator of any tanks located or previously located on the property. Therefore, summary judgment is **GRANTED** for defendant Mr. Chandler on Count I.

B. *Intentional/Fraudulent Misrepresentation and Negligent Misrepresentation*

NU Rentals alleges that Mr. Chandler fraudulently failed to disclose the presence of an underground storage tank and severe soil contamination on the property. To prove fraud in West Virginia, the plaintiff must show: (1) that the defendant committed an act; (2) that the act "was

material and false; that plaintiff relied upon it and was justified under circumstances in relying upon

it" and (3) that the plaintiff was damaged due to his reliance.  Syl. pt. 1, *Lengyel v. Lint*, 280 S.E.2d

66 (W. Va. 1981).  The defendant need not know that the act he committed was false; an action for

fraud may lie where the defendant is aware of the falsity of his act, or acts without knowledge as to

its truth or falsity, or acts "under circumstances such that he should have known of its falsity."  *Id.*

at 69.

> A seller's fraudulent concealment of defects in property can result in liability:

> Where a vendor is aware of defects or conditions which substantially affect the value
> or habitability of the property and the existence of which are unknown to the
> purchaser and would not be disclosed by a reasonably diligent inspection, then the
> vendor has a duty to disclose the same to the purchaser.  His failure to disclose will
> give rise to a cause of action in favor of the purchaser.

Syl., *Thacker v. Tyree*, 297 S.E.2d 885 (W. Va. 1982).[1]  West Virginia imposes a statutory duty upon

persons selling land containing underground storage tanks to disclose the presence of such tanks:

> The grantor in any deed or other instrument of conveyance . . . shall disclose . . . the
> fact that such property, or the substrata of such property . . . contains an underground
> storage tank. The provisions of this subsection only apply to those grantors or lessors
> who owned or had an interest in the real property when the same or the substrata
> thereof contained an underground storage tank which was being actively used for
> storing any regulated substance or who have actual knowledge or reason to believe
> that such real property or the substrata thereof contains an underground storage tank.

W. Va. Code, § 22-17-19(a).

The Complaint pleads facts which could substantiate a finding of fraudulent concealment by

failure to disclose.  NU Rentals avers that "[a]t no point during the transaction did Chandler inform

---

[1] Although *Thacker* concerned the sale of a home, the court's reasoning was not based on
this fact.  *See* 297 S.E.2d at 887 n.2.

NU Rentals that an underground storage tank remained on the subject real property" and that "at no point did Chandler disclose to NU Rentals the underground storage tank(s) contaminated the soil on the subject real property."  (Compl. ¶ 12.)   NU Rentals asserts that "Chandler knew the misrepresentations and omissions were false and misleading because he had previously attempted to remove the underground storage tank from the subject real property."  (*Id.* ¶ 26.)

Mr. Chandler explains his failure to disclose in several ways:  He states that he forgot that a tank had not been removed; he stresses that he had always admitted both that the property could contain contamination and that he was unaware of the extent and severity of such contamination; and he contends that he had no duty to disclose the existence of a tank anyway, since he did not own it.  He also argues that the Escrow Agreement covers any contamination that NU Rentals later found.

These defenses are unavailing.  The record is unclear on whether Mr. Chandler was aware or should have been aware of "defects of conditions which substantially affect the value . . . of the property and the existence of which are unknown to the purchaser and would not be disclosed by a reasonably diligent inspection." *Thacker*, 297 S.E.2d at 888.  Mr. Chandler may have been "in a situation to know," and may have had a "duty to know" of the underground tank and the alleged contamination caused by the tanks.  *Folio v. City of Clarksburg*, 655 S.E.2d 143, 150 (W. Va. 2007).  The Escrow Agreement merely admitted that the property *might* be contaminated with hydrocarbons and other contaminants.  (Def.'s Mem. Supp. Mot. Summ. J., Ex. E ("WHEREAS the Premises may be contaminated with hydrocarbons and other potential contaminants that state and/or federal authorities may require to be removed and replaced with clean uncontaminated fill dirt . . . .").)  According to NU Rentals, Mr. Chandler had known that one storage tank remained on the property, and he arguably should have both remembered this material fact (if he had forgotten it) and

-8-

disclosed it to NU Rentals.  And the fact that Mr. Chandler never owned the tanks at issue does not necessarily affect his duties in selling property containing an underground tank.  *See* W. Va. Code, § 22-17-19(a) (imposing a duty to disclose on grantors of property "who have actual knowledge or reason to believe that such real property or the substrata thereof contains an underground storage tank").

Mr. Chandler also argues that NU Rentals did not rely on his failure to disclose.  He states: "NU Rentals knew prior to signing the Escrow Agreement that Texaco left five tanks on the property . . . and that Chandler had taken out three."[2]  (Def.'s Mem. Supp. Mot. Summ. J. at 15.)  The record shows that NU Rentals knew that the property had five underground storage tanks when Mr. Chandler acquired possession.  ( Def.'s Mem. Supp. Mot. Summ. J., Att. Request of Admissions No. 1.)  But there remains at least a material question of fact as to whether NU Rentals knew that Mr. Chandler "had taken out three."  Indeed, a July 14, 2008 email from Teresa Schuller at Terradon Corporation, the environmental contractor hired by Ed Street Company, to Cheryl Williams of Ed Street Company suggests that the plaintiff was completely unaware that any tanks remained on the property.  In this email, Ms. Schuller wrote:  "There is apparently a 4- or 5,000 gallon tank still in the ground . . . . Mr. Chandler apparently forgot to mention this tank to anyone involved in the project. . . . This latest development may impact our removal tonnage."  (Def.'s Mem. Supp. Mot. Summ. J., Ex. F.)

---

[2]  I am troubled that the pleadings seemingly do not account for all the tanks.  Mr. Chandler agrees with NU Rentals that the initial number of tanks was five, and now states that three had been removed by Mr. Chandler when he purchased the property.  But NU Rentals seems to believe that only one tank remained on the property when NU Rentals purchased it.  (*See* Compl. ¶¶ 10, 12, 13, 14, 17, 20, 24, 26 (referring to a single remaining underground storage tank).)

Mr. Chandler further argues that NU Rentals did not rely on Mr. Chandler's nondisclosure. The Sale Agreement provided that the purchaser had an opportunity to satisfy itself as to the environmental condition of the property prior to closing, and NU Rentals hired a contractor, Terradon Corporation, to investigate the history and contamination of the site.  Some courts have held that a property purchaser's independent investigation can "warrant application of the presumption that the purchaser relied upon the investigation, rather than any misrepresentations of the vendor." *Rockley Manor v. Strimbeck*, 382 S.E.2d 507, 509 (W. Va. 1989).   However, the fact that NU Rentals independently investigated the property does not, in and of itself, bar NU Rentals of the right to rely upon representations—or in this case, alleged concealments and nondisclosures—made by Mr. Chandler.  *Cordial v. Ernst & Young*, 483 S.E.2d 248, 261-62 (W. Va. 1996) (citing 37 Am. Jur. 2d, Fraud & Deceit § 237 (1968)); *see also Rockley Manor v. Strimbeck*, 382 S.E.2d 507, 509 (noting that in situations "where the independent investigation was of a general nature" or "where the exercise of reasonable care would not have uncovered the defect . . . . the independent investigation doctrine is not controlling"); *Manor*, 382 S.E.2d at 509-10 ("If . . . the parties did not stand upon an equal footing respecting opportunity for knowledge of the truth, and the conduct of the falsifier, in the closing of the contract, was misleading, the question of reliance . . . is one for the jury." (quoting Syl. pt. 5, *Angrist v. Burk*, 87 S.E. 74 (1915))).

This case might present a situation in which a particular knowledge "is necessary to an effectual investigation, which knowledge [wa]s possessed by" Mr. Chandler.  *Cordial*, 483 S.E.2d at 261 (quoting 37 Am. Jur. 2d, Fraud & Deceit § 237 (1968)).  Although Mr. Chandler may not have had the technical expertise of Terradon Corporation or the transactional experience of NU Rentals, he was personally familiar with the history of the property at issue.  NU Rentals may have

-10-

relied "in part upon [its] investigation and in part upon the representations" of Mr. Chandler. *Id.* at

262. Notably, even after the investigatory work performed by Terradon, NU Rentals apparently only

learned of the presence of the underground storage tank when someone who had helped Mr.

Chandler remove the other tanks told NU Rentals about the remaining tank. (*See* Def.'s Mem. Supp.

Mot. Summ. J., Ex. F.) Conceivably, the concealment or nondisclosure of the storage tank had

"deter[red] further investigation" before the closing of the sale. *Cordial*, 483 S.E.2d at 262 (quoting

37 Am. Jur. 2d, Fraud & Deceit § 237 (1968)).

Mr. Chandler further argues that NU Rentals has not adequately pled damages. NU Rentals

stated in its Complaint that it "was required to take corrective action *in order to comply with*

*applicable environmental standards.*" (Compl. ¶14 (emphasis added).) Mr. Chandler contends that

NU Rentals's claim for damages must be based on this alleged regulatory liability, because

"[n]owhere in its Complaint does Plaintiff state that it was required to remove the [underground

storage tank] because it got in the way of its installation of utilities or other construction activities."

(Def.'s Reply Pl.'s Mem. Resp. Opp'n Mot. Summ. J. 10.) Mr. Chandler accuses NU Rentals of a

"whole modification of [its] Complaint" by now focusing on the need to remove the storage tank

for its construction activities rather than for regulatory reasons. (*Id.* at 10.)

Mr. Chandler submits an Affidavit from Michael W. Young, a West Virginia Department

of Environmental Protection inspector, who observed the remaining tank prior to its removal in

2008.[3] Mr. Young attests that "there was no visual sign of contamination from the underground

storage tank," and also "no indication of product in the tank or any staining of the concrete in the

---

[3] I am satisfied by Mr. Chandler's explanation in his Reply Memorandum regarding his late disclosure of Mr. Young as a witness. (Def.'s Reply Pl.'s Mem. Resp. Opp'n Mot. Summ. J. 6-8.)

tank." (Def.'s Mem. Supp. Mot. Summ. J., Ex. G, ¶¶ 6-7.)  Mr. Young states that based on his

observations, "there was no regulatory reason to remove the underground storage tank," and that the

West Virginia Department of Environmental Protection "would have allowed the underground

storage tank to remain in place with no further action required as it related to the underground

storage tank" he observed.  (*Id.* ¶¶ 8-9.)

A claim for fraud must be pled with particularity.  Fed. R. Civ. Proc. 9(b); *see also Kimmel*

*v. E. Coal & Mining Co.*, 124 S.E. 661, 662 (W. Va. 1924).  The Complaint clearly states that the

property damage, cost, and expenses suffered by NU Rentals was caused by the excavation and

removal of the underground storage tank and of the allegedly contaminated soil.  (Compl. ¶¶15, 21.)

Whether NU Rentals was required to do this for regulatory reasons, or did so for its construction

activities, is less important than the direct cause of the damages:  the excavation and removal of the

tank and allegedly contaminated soil.  NU Rentals has previously explained the components of its

damages to this court in its Response in Opposition to Mr. Chandler's Motion to Dismiss.  It is

unlikely that NU Rentals would have engaged in this excavation and removal if it NU Rentals did

not feel that such corrective activity was necessary for its property development.  I cannot find that

it is appropriate to grant summary judgment to Mr. Chandler because of a possible defect in NU

Rentals's Complaint as to the ultimate source of damages.[4]  A genuine issue of material fact remains

as to whether the late discovery of the underground tank and the allegedly contaminated soil caused

NU Rentals to suffer damages.  Mr. Chandler's request for summary judgment is **DENIED** on Count

---

[4] Mr. Chandler does not explain how NU Rentals's "modification" of its Complaint materially affects the disputed issues or prejudices Mr. Chandler.

II of the Complaint, Nu Rentals's claim of "Intentional/Fraudulent Misrepresentation and/or Negligent Misrepresentation."

    C. *Attorney's Fees*

    With the outcome of this case still undecided, I **DENY** summary judgment on Count III of NU Rentals's Complaint.

## IV.    Conclusion

    For the reasons stated above, the court **GRANTS** summary judgment to defendant Gary Lee Chandler on Count I of the Complaint and **DENIES** summary judgment on Counts II & III.

    The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:      December 18, 2009

Joseph R. Goodwin, Chief Judge